IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TEAGUE CONWAY | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 04-4862 |
| A.I. DUPONT HOSPITAL FOR | : | |
| CHILDREN, et al. | : | |

SURRICK, J.                                          MAY 26, 2009

## MEMORANDUM

Presently before the Court is Plaintiff's Motion for Reconsideration of Order Entered January 7, 2009 Granting Summary Judgment in Favor of Defendants. (Doc. No. 152.) For the following reasons, the Motion will be denied.

### I.   BACKGROUND

Teague Conway ("Plaintiff") is one of several patients who had a Cheatham Platinum covered stent ("CP stent") implanted in him by doctors at the A.I. duPont Hospital in Wilmington, Delaware. The background of this case is set out more fully in our Memorandum and Order dated January 6, 2009, granting the Defendants' motions for summary judgment.[1]

---

[1] In 2004, Plaintiff and two other individuals filed this lawsuit as a class action. (*See* Compl., Doc. No. 1.) On April 13, 2007, the parties filed a Stipulation dismissing all class action allegations in the Complaint with prejudice. (Doc. No. 68.) On January 11, 2008, we directed that the cases of the three named plaintiffs be tried separately and issued separate civil action numbers. (Doc. No. 101.) Additional background may be found in our summary judgment memoranda filed in the cases of the other two plaintiffs, Molly Guinan and Mark Hess. *See Hess v. A.I. duPont Hosp. for Children*, No. 08-0229, 2009 U.S. Dist. LEXIS 19492 (E.D. Pa. Mar. 5,

*Conway v. A.I. duPont Hosp. for Children*, No. 04-4862, 2009 U.S. Dist. LEXIS 896 (E.D. Pa. Jan. 6, 2009). The instant Motion requests that we reconsider the Order of January 6, 2009. We recount only the facts necessary to our ruling on this Motion.

On December 4, 2003, Plaintiff had a CP stent implanted in his heart, completing the third of three procedures intended to treat a congenital condition known as hypoplastic left heart syndrome. The CP stent, a Class III medical device, did not have FDA pre-market approval at the time that the doctors at the A.I. duPont Hospital implanted it. The doctors had applied for and received a compassionate use exception from the FDA that permitted implantation of the CP stent in Plaintiff. Included in the doctors' application to the FDA were two consent forms signed by Plaintiff's parents. The alternative to implanting the CP stent, which was accomplished by catheterization, was open heart surgery. The physiology achieved by the catheterization and the open heart surgery would be the same; the difference was in the method of achieving that physiology.

After implantation of the CP stent, Plaintiff developed pleural effusions (fluid build-up around the lungs) and ascites (fluid build-up in the abdomen). Plaintiff's parents transferred him to the Children's Hospital of Philadelphia, where the CP stent was eventually removed. Upon removing the CP stent, the doctor who performed the surgery observed a thrombus, or clot formation, within the stent and inferior vena cava.

Plaintiff filed this lawsuit alleging, *inter alia*, that the Defendants (the medical doctors who implanted the CP stent and the A.I. duPont Hospital) were negligent for implanting the CP

---

2009); *Guinan v. A.I. duPont Hosp. for Children* (*Guinan I*), 597 F. Supp. 2d 517 (E.D. Pa. 2009); *Guinan v. A.I. duPont Hosp. for Children* (*Guinan II*), 597 F. Supp. 2d 485 (E.D. Pa. 2009).

2

stent and that they performed the procedure without Plaintiff's informed consent. In September 2008, Defendants filed motions for summary judgment. (*See* Doc. Nos. 116-19.) At the end of November 2008, Plaintiff filed responses in opposition to the motions for summary judgment. (*See* Doc. Nos. 122-29.) We granted Defendants' motions in the January 6th Memorandum and Order. The requirements imposed on medical malpractice plaintiffs imposed by Delaware's Health Care Malpractice Insurance and Litigation Act (the "Health Care Act"), 18 Del. C. §§ 6801, *et seq.*, were central to our determination that Defendants were entitled to summary judgment. Chief among those was the Health Care Act's requirement that plaintiffs support medical negligence claims with medical expert testimony setting forth the standard of care, the healthcare provider's deviation from the standard of care, and the causal connection between the healthcare provider's deviation from the standard of care and the injury sustained by the plaintiff. *See* 18 Del. C. § 6853(e).

Plaintiff relied on the testimony of Dr. Howard S. Weber, a board-certified pediatric cardiologist and professor of pediatrics at Penn State University College of Medicine. (*See* Weber Report, Doc. No. 118, Ex. 1; Weber Dep., Doc. No. 135, Ex. 4 at 120.) Dr. Weber's Report offered the opinion that the thrombus, or clot, caused Plaintiff's pleural effusions and ascites and necessitated the follow-up surgery. *Conway*, 2009 U.S. Dist. LEXIS 896, at *34. We concluded, however, that Dr. Weber did not adequately address the issue of causation because he did not state an opinion that the CP stent caused the clot formation, the need for subsequent surgery, or any other legally cognizable harm. *See generally id.* at *34-40.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 59(e) allows parties to file a motion to alter or amend a

3

judgment. *See* Fed. R. Civ. P. 59(e). Under our local rules, a Rule 59(e) motion is a motion for reconsideration. *See* E.D. Pa. Local R. Civ. P. 7.1(g); *see also, e.g., Barbee v. SEPTA*, No. 04-4063, 2006 U.S. Dist. LEXIS 50314, at *1-2 (E.D. Pa. July 24, 2006) (treating a Rule 59(e) motion as a motion for reconsideration under Local Rule 7.1(g)). The purpose of a motion for reconsideration is to "'correct manifest errors of law or fact or . . . [to] present newly discovered evidence.'" *Max's Seafood Cafe, by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 678 (3d Cir. 1999) (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)). A judgment may be altered or amended on three grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Id.* (citing *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)); *see also Interdigital Commc'ns, Corp., v. Fed. Ins. Co.*, 403 F. Supp. 2d 391, 393 (E.D. Pa. 2005).

"Because of the courts' interest in the finality of judgments, motions for reconsideration should be granted sparingly." *Tomasso v. Boeing Co.*, No. 03-4220, 2007 U.S. Dist. LEXIS 62492, at *4 (E.D. Pa. Aug. 24, 2007) (citing *United States v. Bullock*, No. 98-5023, 2005 U.S. Dist. LEXIS 1833, at *1 (E.D. Pa. Jan. 24, 2005)); *see also A.K. Stamping Co. v. Instrument Specialties Co.*, 106 F. Supp. 2d 627, 662 (D.N.J. 2000) (noting that Rule 56(e) provides an "extraordinary remedy" that is "'to be granted sparingly'" (quoting *NL Indus., Inc., v. Commercial Union Ins., Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996))). Parties may not use Rule 59(e) motions as a vehicle to "'ask . . . Court[s] to rethink what [they] ha[ve] already thought through – rightly or wrongly.'" *Glendon Energy Co. v. Borough of Glendon*, 836 F. Supp. 1109,

1122 (E.D. Pa. 1993) (citation omitted). Indeed, courts need not "reconsider repetitive arguments that have [already] been fully examined . . . ." *Sonders v. PNC Bank, N.A.*, No. 01-3083, 2003 U.S. Dist. LEXIS 17961, at *3-4 (E.D. Pa. Oct. 9, 2003) (*citing Blue Mountain Mushroom Co. v. Monterey Mushroom, Inc.*, 246 F. Supp. 2d 394, 398 (E.D. Pa. 2002)).

### III.   DISCUSSION

Plaintiff seeks relief from the January 6th Memorandum asserting that the Court committed clear errors of law and clear errors of fact. In support of his Motion, Plaintiff points to alleged oversights in our review of the record and alleged errors in our application of the law as related to the causation requirement under Delaware's Health Care Act.

#### A.   Oversights in Review of the Record

In urging us to reconsider the January 6th Memorandum, Plaintiff relies on two documents. The first document is deposition testimony of Dr. Murphy in which he stated that the clot was an "adverse event related to" the use of the CP stent. (Murphy Dep., Doc. No. 152, Ex. 1 at 150.) The second document is a supplemental expert report of Dr. Weber dated January 16, 2009, in which he states in pertinent part that "[h]ad it not been for the decision to complete the Fontan circulation with the covered stent, the thrombus formation and subsequent blockage would likely not have occurred . . . ." (Weber Supp. Report, Doc. No. 152, Ex. 2 at 1.) Neither of these documents was a part of the record when we issued the January 6th Memorandum.

Documents that are not a part of the record when a district court decides a summary judgment motion cannot be submitted as evidence in support of a motion for reconsideration of the grant of summary judgment. *See Pavlik v. Lane Ltd./Tobacco Exps. Int'l*, 135 F.3d 876, 882 n.2 (3d Cir. 1998) (noting that where a "document was not in the record when the district court

5

decided the defendant's summary judgment motion [the plaintiff could] not submit that evidence in support of a motion to reconsider a grant of summary judgment").

Plaintiff asserts that "the court failed to take account of the fact that Defendant John Murphy . . . testified under oath that the procedure caused [Plaintiff's] adverse reactions . . . ." (Doc. No. 152.) There is no question that the testimony on which Plaintiff relies was not in the record when we decided Defendants' motions for summary judgment. Plaintiff had access to the testimony and could have made it a part of the record, but he did not. *See Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (Fisher, J.) (noting that "summary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion [for summary judgment] with facts in the record . . ."). Indeed, Plaintiff argues that he "had planned to read portions of the Murphy deposition testimony at trial." (Doc. No. 152 at 2.) Plaintiff does not explain why he did not cite to the testimony in his opposition to the Defendants' motions. Because Dr. Murphy's testimony was available to Plaintiff at the time he opposed the Defendants' motions for summary judgment, it is not "new evidence." *See Max's Seafood Cafe*, 176 F.3d at 677; *see also Jama Corp. v. Giriwarlal*, No. 99-1624, 2008 U.S. Dist. LEXIS 15019, at *8 (M.D. Pa. Feb. 28, 2008) (holding that evidence that was available to the plaintiffs at the time they made their motion was not new evidence). Accordingly, the testimony cannot provide a proper basis for reconsidering our summary judgment determination. *See Norman v. Elkin*, No. 06-005, 2008 U.S. Dist. LEXIS 51158, at *3 (E.D. Pa. July 2, 2008) ("To the extent that [the defendants] have presented deposition testimony not previously presented, and not newly discovered, their motion [for reconsideration] is unsupported."); *see also Bailey v. United Airlines*, 279 F.3d 194, 201 (3d Cir. 2002) ("A district court may properly refuse to

consider evidence presented in a motion for reconsideration when the evidence was available prior to summary judgment."); *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, No. 94-7316, 2004 U.S. Dist. LEXIS 19044, at *3 (E.D. Pa. Sept. 16, 2004) (denying motion to reconsider premised on purportedly new documents where the plaintiff had the documents in his possession before the close of discovery "and well before summary judgment motions were filed").[2]

Similarly, Dr. Weber's Supplemental Expert Report is not new evidence and is not an appropriate basis upon which to reconsider our summary judgment determination. *See Harsco*, 779 F.2d at 909 (observing that trial court properly disregarded affidavit filed in support of a motion for reconsideration where the affidavit "contain[ed] evidence that was available prior to

---

[2] Courts outside of the Third Circuit have reached similar conclusions with regard to untimely submitted deposition testimony. *See, e.g., Mills v. Davis*, 53 Fed. App'x 480, 482 (9th Cir. 2002) (unpublished opinion) (finding that the depositions that the plaintiffs sought to introduce in support of their motion for reconsideration "were taken over a year before the district court granted defendants' motions for summary judgment, and thus [we]re . . . not 'new evidence'"); *Comsat Corp. v. St. Paul Fire & Marine Ins. Co.*, 246 F.3d 1101, 1107 (8th Cir. 2001) (noting that where the plaintiff had "deposition results eighteen days before the court issued its [summary judgment] ruling" and where the plaintiff "took no action to ask for a continuance or to supplement the record until after judgment was entered" the plaintiff could not avail himself of that testimony in a motion for reconsideration); *Uhl v. Zalk Josephs Fabricators*, 121 F.3d 1133, 1135 (7th Cir. 1997) (emphasizing "the proper presentation of evidence to the district court and [the appellate court]" and affirming district court's denial of the plaintiff's motion for reconsideration based on, *inter alia*, the fact that the plaintiff had the deposition testimony at issue "long before filing his summary judgment response brief, making the information from the depositions untimely"); *Bell v. Eastman Kodak Co.*, No. 95-C-4687, 1998 U.S. Dist. LEXIS 18191, at *6 (N.D. Ill. Nov. 12, 1998) (holding that the plaintiff could not rely on deposition testimony to support his motion for reconsideration when that testimony was available over one and a half years prior to the court's summary judgment determination); *Soil Solutions, Inc., v. Spraying Devices, Inc.*, No. 95-6028, 1996 U.S. Dist. LEXIS 18727, at *10 (E.D. Cal. Aug. 6, 1996) (noting that the court should not consider documents, including depositions, submitted in support of the plaintiff's motion for reconsideration "because they could have been submitted at the summary judgment stage").

7

summary judgment"); *see also A.K. Stamping*, 106 F. Supp. 2d at 665 (disregarding affidavit containing new opinion that could have been introduced at the summary judgment and preliminary injunction phase).[3] Notwithstanding the fact that the Supplemental Report is not newly discovered evidence, Plaintiff's attempt to submit it now raises significant problems. Courts have variously articulated these problems by stating that motions for reconsideration should not give parties a "second bite at the apple" or "another roll of the dice." *See, e.g., Calhoun v. Mann*, No. 08-0458, 2009 U.S. Dist. LEXIS 4195, at *2 (E.D. Pa. Jan. 22, 2009) ("Reconsideration is not permitted simply to allow a 'second bite at the apple.'" (citing *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1231 (3d Cir. 1995))); *Envtl. Tectonics Corp. v. Walt Disney World Co.*, No. 05-6412, 2008 U.S. Dist. LEXIS 47123, at *4 (E.D. Pa. June 13, 2008) ("While claiming to cite 'factual errors' in the opinion, in reality plaintiff seeks another roll of the dice, which is emphatically not the purpose of a motion for reconsideration.").

---

[3] As in the case of deposition testimony that was available prior to a summary judgment decision, courts outside of the Third Circuit have determined that supplemental or additional expert reports filed in support of motions for reconsideration are inappropriate and should not be considered. *See, e.g., United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 935 (8th Cir. 2006) (affirming district court's denial of party's Rule 59(e) motion for reconsideration where the expert report submitted in support of the motion was "merely a newly created opinion based on facts known to or accessible by [the party] at the time of the . . . hearing and [did not] warrant relief under Rule 59(e)"); *Navarro v. Fuji Heavy Indus.*, 117 F.3d 1027, 1032 (7th Cir. 1997) (Posner, J.) (noting that even if a supplemental expert affidavit filed in support of the plaintiff's motion for reconsideration would have created a genuine issue of fact at the summary judgment phase "[t]he insuperable difficulty for the plaintiff is that a motion to alter the judgment may not be based on evidence that was available when the district judge took the motion for summary judgment under advisement but that was not presented then"); *Sanders v. Laurel Highlands River Tours*, 966 F.2d 1444 (table), No. 92-1060, 1992 U.S. App. LEXIS 15094, at *7 (4th Cir. June 29, 1992) (per curiam) (affirming district court's denial of the plaintiff's motion for reconsideration where "the district court refused to give [the plaintiff] a 'second bite at the apple' by supplementing the medical expert's affidavit"); *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 797 (Fed. Cir. 1990) (noting that an "additional [expert] affidavit" filed in support of the plaintiff's motion to reconsider was untimely).

These metaphors implicate the efficient use of judicial resources and the strong interest of courts in the finality of their judgments. Plaintiff has provided no arguments addressing these concerns. In addition, Plaintiff's attempt to submit Dr. Weber's Supplemental Report raises significant questions of fairness. Plaintiff has had ample time to investigate his case, research the applicable law, conduct discovery, obtain expert opinions, and defend against summary judgment. He cannot use a motion for reconsideration to introduce evidence, which was available to the him before the summary judgment briefing was due, in support of a different result. *See Sanders*, 1992 U.S. App. LEXIS 15094, at *8 (noting district court's determination that taking into account the plaintiff's supplemental expert report "would substantially diminish the purpose and utility of summary judgment"). *Cf. Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (stating that "Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis"). Absent a compelling reason, Dr. Weber's Supplemental Report cannot form a basis for reconsidering our summary judgment determination. Plaintiff has offered no such reason. We will not treat Dr. Weber's Supplemental Report as part of the record.[4]

**B.     Errors of Law**

---

[4] In their Opposition to Plaintiff's Motion, Defendants seek exclusionary and monetary sanctions pursuant to Federal Rule of Civil Procedure 37 on the grounds that Plaintiff "is precluded from using testimony of a witness unless the testimony was timely disclosed pursuant to Rule 26(a) of the Federal Rules of Civil Procedure," and that the Supplemental Report constitutes untimely disclosed testimony. (Doc. No. 153 at 12-13.) Plaintiff's submission of Dr. Weber's Supplemental Expert Report was clearly improper and we will not consider it. We will not, however, impose monetary sanctions for the transgression.

Plaintiff argues that the January 6th Memorandum contains mistakes of law. He takes issue with our interpretation of the causation element of medical negligence claims under Delaware law, arguing that it was "erroneous to hold that it is essential in this case to prove that the [CP] stent caused the clot" and that "the court mistakenly [held] that proving causation in this case required proof that the [CP] stent caused the blood clot." (Doc. No. 153 at 5, 8; *see also id.* at 10 (arguing that "the court improperly conceptualizes the cause-in-fact requirement under Delaware law by narrowing the medical cause issue to what caused the clot").) In Plaintiff's view, "[n]either the dismissal of the intentional nor the negligent tort claims rests on a sound analysis of Delaware law." (*Id.* at 18.)

Where there is no manifest error of law or intervening change in the controlling law that renders the court's decision erroneous, the court need not reconsider its ruling. *See Max's Seafood Cafe*, 176 F.3d at 678. ("[R]econsideration is the appropriate means of bringing to the court's attention manifest errors of fact or law."). The arguments that Plaintiff now makes and the cases he now cites do not convince us that any portion of the January 6th Memorandum is manifestly wrong as to any issue of law. It is interesting to note in this regard that a review of Plaintiff's responses to Defendants' summary judgment motions reveals that Plaintiff cited to no Delaware case law in support of his position.[5] (*See generally* Doc. Nos. 124, 125, 126, 127.) Since Plaintiff's case was based upon Delaware's Health Care Act, Plaintiff's failure to cite to the operative provisions of the Act or any cases interpreting the Act is perplexing.

To the extent that Plaintiff now cites Delaware cases to argue legal theories that could

---

[5] The one provision of the Health Care Act that Plaintiff did cite pertains to punitive damages. (*See* Doc. No. 126 at 30 n.14 (*citing* 18 Del. C. § 6855).) Reference to it added little to the persuasiveness or cogency of Plaintiff's arguments in opposition to summary judgment.

have been, but were not, raised in his opposition papers, he is precluded from doing so. New legal argument is not appropriate at this juncture. *See Interdigital*, 403 F. Supp. 2d at 392-93 (holding that legal argument that was not "articulated at any time during the litigation and may not be injected into th[e] case by way of a motion for reconsideration") (citations omitted). In other words, Plaintiff cannot cite such law in order to have us rethink what we have already thought through. *See Glendon Energy*, 836 F. Supp. at 1122; *Doe v. Allentown Sch. Dist.*, No. 06-CV-1926, 2008 U.S. Dist. LEXIS 74513, at *6 (E.D. Pa. Sept. 26, 2008) (*citing Glendon Energy*, 836 F. Supp. at 1122); *Blunt v. Lower Merion Sch. Dist.*, 559 F. Supp. 2d 548, 574 (E.D. Pa. 2008) ("A motion for reconsideration should not be used as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided. Therefore, it is improper . . . to ask the Court to rethink what it had already thought through.") (quotations, alterations, and citations omitted).

Plaintiff construes the January 6th Memorandum narrowly in an effort to establish that our decision was erroneous as a matter of law. He does so by arguing that in dealing with the issue of causation, we improperly focused on the cause of the clot. He states that "the court improperly conceptualizes the cause-in-fact requirement under Delaware law by narrowing the medical cause issue to what caused the clot." (Doc. No. 153 at 10.) Plaintiff's argument is simply incorrect. It misapprehends our rationale in reaching the conclusion that we reached, and it exposes Plaintiff's fundamental misunderstanding of his burden in opposing summary judgment. In the January 6th Memorandum, we noted Defendants' argument that Plaintiff had not produced sufficient medical expert testimony on the issue of causation. *Conway*, 2009 U.S. Dist. LEXIS 896, at *33. The burden was on Plaintiff to identify a genuine issue of material fact

regarding causation. *See* Fed. R. Civ. P. 56(e)(2) (providing that "[w]hen a motion for summary judgment is properly made and supported, an opposing party . . . must . . . set out specific facts showing a genuine issue for trial" and that "[i]f the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party"); *see also Celotex*, 477 U.S. at 325 (discussing how Rule 56(e) operates). Under Delaware law, Plaintiff could only establish a genuine issue for trial regarding the causation element of his medical negligence theories with the testimony of a medical expert. *See* 18 Del. C. § 6853(e); *Burkhart v. Davies*, 602 A.2d 56, 61 (Del. 1991) (holding that medical expert testimony is an essential element of a medical negligence claim, the absence of which entitles defendants to summary judgment (*citing Celotex*, 477 U.S. at 323)). It was Plaintiff's burden to demonstrate that the record contained medical expert testimony sufficient to satisfy requirements of section 6853.

In opposition to Defendants' motions, Plaintiff cited one portion of Dr. Weber's Report to establish that the implantation of the CP stent caused Plaintiff harm.[6] (*See* Doc. No. 127 at 9.) That portion of the Report states that the existence of a clot in the CP stent necessitated a follow-up surgery. It does not state that the CP stent – as opposed to the physiological restructuring of Plaintiff's heart – caused the clot or resulted in the need for the subsequent surgery, either of which would likely have been sufficient to satisfy the requirements of section 6853.

Plaintiff's assertion that we "narrow[ed] the medical cause issue to what caused the clot" disregards the fact that it was Plaintiff who narrowed the issue through Dr. Weber's Report and

---

[6] Notwithstanding Plaintiff's narrow focus, we considered Dr. Weber's entire Report and determined that it stated a chronological series of events without opining on a causal relationship between the use of the CP stent and any harm experienced by Plaintiff. *See Conway*, 2009 U.S. Dist. LEXIS 896, at *23-24 (setting out opinion portion of Dr. Weber's Report in its entirety); *see also id.* at *34-40 (discussing the Report in relation to section 6853 and Delaware case law).

Plaintiff's argument. We addressed the issue as presented. Plaintiff cannot now amend his theory of causation or put forth new arguments, supported by a supplemental expert report, that were available to him at the time he opposed Defendants' motions for summary judgment.[7]

---

[7] Plaintiff also argues for reconsideration on the grounds that the motion for summary judgment was granted without oral argument. (*See* Doc. No. 152 at 11.) He contends that "[o]ral argument might well have revealed that there was a difference among the parties and the court about the conceptualization of 'but-for' factual causation as a basis for summary judgment; it would have also given Plaintiff an opportunity to respond to the court's concerns." (Doc. No 154 at 3.) However, as the above discussion illustrates, Defendants raised the issue of causation under Delaware law, and did so in numerous places in the record. (*See* Doc. No. 116 at 11; Doc. No. 117 at 10-12; Doc. No. 118 at 24-25; Doc. No. 130 at 2; *see also* Doc. No. 134 at 12-14.) Plaintiff was on notice that there was a difference in the "conceptualization of 'but-for' factual causation." There is therefore no merit to Plaintiff's contention that oral argument would have clarified Defendants' challenge to the sufficiency of Plaintiff's evidence.

Moreover, oral argument was not required before the grant of Defendants' motions for summary judgment. Local Rule of Civil Procedure 7.1(f) provides that "[a]ny interested party may request oral argument on a motion," but "[t]he court may dispose of a motion without oral argument." E.D. Pa. Local R. Civ. P. 7.1(f); *see also FDIC v. Deglau*, 207 F.3d 153, 162 (3d Cir. 2000) (noting that under Local Rule 7.1(f), "the trial court was permitted to decide the motion . . . at any time it wished, after the petition and answer were filed, without hearing from the parties"). With regard to summary judgment motions, the Third Circuit has held that "[w]hile Rule 56 speaks of a 'hearing,' we do not read it to require that an oral hearing be held before judgment is entered. An opportunity to submit written evidence and argument satisfies the requirements of the rule." *Anchorage Assoc. v. V. I. Bd. of Tax Rev.*, 922 F.2d 168, 176-77 (3d Cir. 1990); *see also AIG Baker Shopping Ctr. Props., LLC, v. Deptford Twp. Planning Bd.*, No. 04-5849, 2006 U.S. Dist. LEXIS 727, at *30 (E.D. Pa. Jan. 10, 2006) (noting that Federal Rule of Civil Procedure 78 "grants a district judge wide discretion to decide whether to hear oral argument on a particular motion, or instead, to decide it on the papers" and citing *Anchorage Associates*, 922 F.2d at 176-77, for the proposition that district courts need not hold oral argument on motions for summary judgment). It is well established that "[t]here is nothing fundamentally unfair about the summary judgment process, nor does the absence of an opportunity to supplement written submissions with oral advocacy constitute a denial of due process." *Cruz v. Melecio*, 204 F.3d 14, 19 (1st Cir. 2000); *accord Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 910 (1990) (Blackmun, J., dissenting) (noting that "[t]he Courts of Appeals consistently have recognized . . . that Rule 56 does not necessarily contemplate an oral hearing") (internal quotation marks and citation omitted); *Greene v. WCI Holdings Corp.*, 136 F.3d 313, 316 (2d Cir. 1998) (per curiam) ("Every circuit to consider the issue has determined that the 'hearing' requirements of . . . Rule 56 do not mean that an oral hearing is necessary, but only require that a party be given the opportunity to present its views to the court."); *Cray Commc'ns, Inc., v. Novatel Computer Sys.*, 33 F.3d 390, 396 (4th Cir. 1994) (oral hearing on a summary

## C. Manifest Injustice

Plaintiff does not clearly argue in his Motion that a manifest injustice would result unless we amend our judgment. He does, however, raise this argument in his Reply in support of the Motion. (*See* Doc. No. 154 at 4-5.)

A judgment may be altered or amended to prevent a manifest injustice. *Max's Seafood Cafe*, 176 F.3d at 677-78. There is a dearth of case law within the Third Circuit discussing the standard to be applied when dealing with manifest injustice. Indeed, one court outside this Circuit has observed that there is no governing standard for what constitutes a manifest injustice

---

judgment motion is at the discretion of trial court); *Chrysler Credit Corp. v. Cathey*, 977 F.2d 447, 449 (8th Cir. 1992) (determining that a "hearing" on a summary judgment motion may consist of written submissions rather than oral argument); *Arrieta-Gimenez v. Arrieta-Negron*, 859 F.2d 1033, 1042 (1st Cir. 1988) (same); *Geear v. Boulder Comm. Hosp.*, 844 F.2d 764, 766 (10th Cir. 1988) (district court review of briefs and other materials submitted in support of motion satisfied "hearing" requirement of Rule 56); *Langham-Hill Petroleum, Inc., v. S. Fuels Co.*, 813 F.2d 1327, 1330 (4th Cir. 1987) (noting that "there is no absolute requirement that a ruling on a motion for summary judgment be preceded by a hearing"); *Donaldson v. Clark*, 819 F.2d 1551, 1555 (11th Cir. 1987) ("Rule 56 does not require that an oral hearing be held on a summary judgment motion."); *Grigoleit Co. v. United Rubber, Cork, Linoleum & Plastic Workers of Am. Local 270*, 769 F.2d 434, 437 (7th Cir. 1985) (noting that "the type of hearing required under rule 56(c) need not include oral argument"); *Baker v. Norman*, 651 F.2d 1107, 1119 (5th Cir. 1981) ("[W]hile Rule 56(c) contemplates notice to an adverse party and a 'hearing' before the court rules on a summary judgment motion, the 'hearing' need not be one in which the court receives oral argument."); *Spark v. Catholic Univ. of Am.*, 510 F.2d 1277, 1280 (D.C. Cir. 1975) (noting that the court may grant summary judgment without oral argument).

In this case, Plaintiff's responses to Defendants' motions for summary judgment were due on November 14, 2008. (*See* Am. Scheduling Order, Doc. No. 110.) Plaintiff filed two of his responses (Doc. Nos. 124-25), and the exhibits to a third, unfiled response (Doc. Nos. 122-23), on November 25, 2008, eleven days late. He filed two more responses on December 1, 2008, seventeen days late. (Doc. Nos. 126-27.) He also filed supplemental exhibits to one of his motions on December 2, 2008, eighteen days after the deadline. (Doc. Nos. 128-29.) We considered all of Plaintiff's submissions in deciding the motions for summary judgment as well as evidence filed by the parties in support of and in opposition to their motions in limine. (*See* Doc. Nos. 132-41.) Plaintiff had ample opportunity to be heard without the necessity of oral argument.

as the term applies to Rule 59(e) and that courts should "look at the matter on a case-by-case basis" to determine whether a judgment will work a manifest injustice.[8] *United States v. Jarnigan*, No. 08-CR-7, 2008 U.S. Dist. LEXIS 60395, at *6-7 (E.D. Tenn. July 25, 2008) (*citing McDaniel v. Am. Gen. Fin. Servs.*, No. 04-2667, 2007 U.S. Dist. LEXIS 52217 (W.D. Tenn. July 17, 2007); *Attorney Registration & Disciplinary Comm. of Sup. Ct. v. Betts*, 157 B.R. 631 (Bankr. N.D. Ill. 1993)). The Third Circuit's opinion in *Max's Seafood Cafe* provides a starting point for identifying the types of situations where such a finding is warranted.

In that case, the plaintiff purchased a well-known restaurant named "Max's Seafood Cafe." 176 F.3d at 671. Included in the purchase price were the business goodwill associated with the restaurant and all rights in the trade name "Max's," as well as a consent decree enjoining the former owner, Max Quinteros, from using his first name to "market, designate, or identify . . . [the defendants'] restaurant business or vocation." *Id.* Over a period of time, the defendants allegedly used the name Max to promote a competitor of Max's Seafood Cafe. The plaintiff commenced contempt proceedings against Quinteros, his business associate, and Jack-Mack, LLC, a corporation owned by Quinteros that had been formed in 1997. The district court held all

---

[8] Several courts have attempted to clarify the standard. For example, in the context of a Rule 59(e) motion to reconsider summary judgment in favor of a disability plan and claims administrator that had terminated the plaintiff's long term disability benefits, a district court held that "[t]he term 'manifest injustice' implies that the Court must be faced with a disability determination so patently unfair and tainted that the error is manifestly clear to all who view the record." *Curry v. Eaton Corp.*, No. 07-5, 2008 U.S. Dist. LEXIS 48551, at *43 (W.D. Ky. June 24, 2008). Other courts have applied the definition of manifest injustice given in Black's Law Dictionary to Rule 59(e) motions: "A 'manifest injustice' is defined as 'an error in the trial court that is direct, obvious, and observable, such as a defendant's guilty plea that is involuntary or that is based on a plea agreement that the prosecution rescinds.'" *In re Oak Park Calabasas Condo. Ass'n*, 302 B.R. 682, 683 (Bankr. N.D. Cal. 2003) (*quoting* Black's Law Dictionary 974 (7th ed. 1999)).

three defendants in contempt with regard to certain statements made in 1996. The defendants moved for reconsideration as to Jack-Mack on the grounds that, *inter alia*, it was not in existence at the time that the "contumacious" statements were made. *Id.* at 673. The district court denied the motion.

The Third Circuit reversed on appeal, holding that:

> [i]n denying reconsideration to Jack-Mack on this issue, the District Court ruled that there was no intervening change in controlling law or newly discovered evidence; it failed to address the third issue: whether holding Jack-Mack in contempt resulted in a clear error of law or fact or resulted in a manifest injustice. Although we have pointed out that "courts often take a dim view of issues raised for the first time in post-judgment motions," *Kiewit E. Co. v. L & R Constr. Co.*, 44 F.3d 1194, 1204 (3d Cir. 1995), in this case the issue that Jack-Mack sought to raise as a defense in its motion for reconsideration was so fundamental, i.e., that Jack-Mack had not come into being until more than six months after the last of [the] contumacious acts, that it was not consistent with the wise exercise of discretion for the District Court to have declined even to consider it. As we have previously emphasized, reconsideration is the appropriate means of bringing to the court's attention manifest errors of fact or law.

*Id.* at 678. It is unclear whether the court perceived of the issue as one of a clear error of fact or of manifest injustice. In any event, the discussion of the court makes it clear that the standard is a high one. Based on Jack-Mack's date of incorporation, it was a factual impossibility that Jack-Mack could have been liable for the contumacious conduct. *See id.* at 678-79.

The impossibility of Jack-Mack's direct liability stands in contrast to the evidence that Plaintiff seeks to introduce into the record through his Motion. In *Max's Seafood Cafe*, the Third Circuit determined that there was no room for argument that Jack-Mack could be directly liable. Thus, the district court's determination resulted in an injustice: it found a defendant liable for something it could not have done. While finding a manifest injustice is, no doubt, warranted in situations other than a court's reliance on a factual impossibility, Plaintiff's case is not one of them. The evidence that Plaintiff now seeks to introduce and the arguments that he now makes

16

do not establish the sort of "direct, obvious, and observable" error that the term manifest injustice evokes. *See* Black's Law Dictionary 982 (8th ed. 2004). This is particularly so because Plaintiff could have submitted the evidence in support of his opposition to Defendants' motions for summary judgment. Omission of the evidence from earlier briefing could have been either a strategic decision on Plaintiff's part, or an inadvertent error. Regardless, to treat either as a basis for a finding of manifest injustice would be to give Plaintiff a second bite at the summary judgment apple. More broadly, it would allow parties who do not properly defend against summary judgment the ability to unnecessarily protract proceedings by claiming that their own poor strategy or mistakes entitles them to a second chance.

It is not the job of courts deciding motions for reconsideration to rescue parties from their strategic litigation choices. *See, e.g., Bridgestone Sports Co. v. Acushnet Co.*, No. 05-132, 2007 U.S. Dist. LEXIS 13347, at *5 (D. Del. Feb. 26, 2007) (noting that the defendant's "inability to pursue" a litigation theory articulated in its motion for reconsideration was "the result of its own strategic litigation decisions, and [that] the Court will not rescue [the defendant] from its choices"); *In re Dreyfus Mut. Funds Fee Litig.*, No. 04-0128, 2006 U.S. Dist. LEXIS 41359, at *12 (W.D. Pa. June 20, 2006) (denying the plaintiffs' motion for reconsideration and noting that "[t]o the extent that plaintiffs consciously made the decision to not file" a motion that might have saved their case "they must be held to have done so at their peril"). It is similarly not the job of courts deciding motions for reconsideration to rescue parties from their own errors. *See Johnson v. Diamond State Port Corp.*, 50 Fed. App'x 554, 555, 560 (3d Cir. 2002) (unpublished opinion) (rejecting the plaintiff's "implausible claim" that the district court should have taken into account his untimely filed affidavit to prevent a manifest injustice where "counsel's carelessness was

solely responsible for the failure to [timely] submit the affidavit").

A line of cases from the United States Court of Appeals for the District of Columbia Circuit provides additional guidance. These cases hold that potentially outcome-determinative litigation mistakes that were easily avoidable cannot be invoked by the party who made the mistakes to establish a manifest injustice under Rule 59. *Ciralsky v. CIA*, 355 F.3d 661, 673 (D.C. Cir. 2004) (finding that district court's conclusion that "manifest injustice does not exist where . . . a party could have easily avoided the outcome, but instead elected not to act until after the final order had been entered" was not an abuse of discretion); *Fox v. Am. Airlines, Inc.*, 389 F.3d 1291, 1296 (D.C. Cir. 2004) (finding that district court had not abused its discretion "in declining to vacate its judgment of dismissal to prevent 'manifest injustice' flowing from" the plaintiffs' failure to avoid "dismissal of their suit," which "might have been avoided through the exercise of due diligence"); *see also Int'l Painters & Allied Trades Indus. Pension Fund v. Design Techs.*, 254 F.R.D. 13, 19-20 (D.D.C. 2008) (*citing Ciralsky*, 355 F.3d at 673 ).

Plaintiff could have submitted Dr. Murphy's testimony in support of his opposition to the Defendants' motions for summary judgment. Plaintiff could have produced a medical expert report that complied with the clear requirements of Delaware law, or attempted to address the problems with Dr. Weber's Report as raised by Defendants in their motions for summary judgment. Finally, Plaintiff could have cited Delaware case law to support his responses to Defendants' motions for summary judgment. Plaintiff did none of these things. Plaintiff's failures were not prompted by any action of the Court or Defendants. They cannot now be used as a basis for reconsideration of our decision on Defendants' motions for summary judgment.

## III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for reconsideration will be denied.

An appropriate will Order follow.

BY THE COURT:

_____
R. Barclay Surrick, J.
